Steven V. Berson Deputy Director Department of Revenue 1375 Sherman Street Denver, CO 80261
Dear Mr. Berson:
I am writing in response to your letter of September 15, 1980 in which you request a legal opinion concerning a proposed reorganization of the Department of Revenue. You state that the department proposes to transfer the Motor Vehicle Hearing Section from the Office of the Executive Director to the Motor Vehicle Division.
QUESTION PRESENTED AND CONCLUSION
Your question is as follows:
What, if any, legal problems would arise under the Department of Revenue's proposal to transfer the Motor Vehicle Hearing Section from the office of the executive director to the Motor Vehicle Division?
 It is my opinion that the Hearing Section should continue to be organizationally insulated from the Motor Vehicle Division in order to avoid possible legal problems and to comply with the letter and spirit of C.R.S. 1973, 24-4-105(6).
ANALYSIS
Your letter states that the Hearing Section was transferred many years ago from the Motor Vehicle Division to the Office of the Executive Director because of the State Administrative Procedure Act. Apparently the reason for that change was a decision that the hearing officers should not be under the supervision of the chief of the Motor Vehicle Division, who has operating responsibility for the driver's license program.
Employees of the Hearing Section serve as hearing officers for the department to hear matters concerning primarily the suspension and revocation of driver's licenses. Seee.g., C.R.S. 1973, 42-2-123(9) and (10), 42-2-122(3),42-2-203, 42-4-1202(3)(e) (Supp. 1979). It is my understanding that the Motor Vehicle Division is the arm of the Department of Revenue charged with administering the statutory requirements pertaining to issuance of driver's licenses. The division has responsibility for maintaining records for each driver concerning traffic offense convictions. It also makes the initial determination that a driver's record subjects his license to suspension or revocation.
There is no constitutional due process problem with an administrative scheme that permits an agency to both investigate and make a final adjudication of a particular case.See Withrow v. Larkin, 421 U.S. 35,95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). There is, however, an applicable statutory provision of the State Administrative Procedure Act contained in subsection (6) of C.R.S. 1973, 24-4-105, which provides as follows:
 (6) No person engaged in conducting a hearing or participating in a decision or an initial decision shall be responsible to or subject to the supervision or direction of any officer, employee, or agent engaged in the performance of investigatory or prosecuting functions for the agency.
(Emphasis added.) This particular provision has not been interpreted by the Colorado courts. The underlined language of that subsection is virtually identical to language contained in the federal Administrative Procedure Act ("APA") at 5 U.S.C. § 554(d) (1977). Consequently, the federal APA should be considered in a determination of the meaning of section24-4-105(6).
The federal APA was created in part because Congress was greatly concerned with a growing practice in federal agencies of embodying in one person or agency the duties of prosecutor and judge. The federal APA recognized that commingling functions was undesirable, but also unavoidable. Congress adopted the approach of creating independent hearing commissioners within an agency who are insulated from all aspects of a particular case other than hearing and deciding the case. See Wong YangSung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616
(1950).
The federal APA approach is that of "internal separation" which has been explained by one commentator in the following manner:
 That is, the protection within the agency of the judging function, so that it will not be contaminated through influence from those who are prosecuting or investigating.
2 Davis, Administrative Law Treatise, § 13.05 (1958). Professor Davis has noted that one weakness of this approach is that judges, prosecutors and investigators all have common superiors in a particular agency. He suggests this problem may be mitigated by having several layers of the agency separating the supervisor from those persons performing the judging, prosecuting and investigatory functions. Davis,supra.
The problem is not only actual influence or bias on a hearing officer, but also the potential for bias. The federal APA attempts to create a system which will insulate hearing officers from potential bias. I have not found any case under the federal APA which interprets this particular language in a way that is applicable to the circumstances of the Department of Revenue.
The Colorado State Administrative Procedure Act and the federal APA significantly differ in many respects. It is evident, however, that by enacting C.R.S. 1973, 24-4-105(6) the Colorado General Assembly intended to adopt the federal philosophy of insulating hearing officers.
Employees of the Motor Vehicle Division do not prosecute a driver at a license hearing. Employees of the Motor Vehicle Division do have responsibility, however, for initiating suspension or revocation of a license when the division's records show that such action is required. This recordkeeping function of the division does appear analogous to an investigative functory in other agencies.
I conclude that although the transfer you propose is not prohibited by law, the hearing section should be as insulated as possible from those supervising the employees who make the initial decision that suspension or revocation is appropriate. Retaining the Hearing Section as directly responsible to the executive director of the department insulates the Hearing Section within the department and avoids possible legal problems arising from the State Administrative Procedure Act.
SUMMARY
It is therefore my opinion that the hearing section should remain directly.